Good morning. May it please the court, counsel. I'm Steve Frampton. I represent Mr. Felipe Felix Carrasco in this matter. Essentially what this case is dealing with is the appellant was, for lack of a better phrase, hung out to dry at all stages of his case. From the pretrial phase to the trial phase to the section 2255 phase. All along the way his trial attorney was ill prepared or basically just abandoned him midstream. The record reflects that there was very little communication with the appellant at the pretrial phase. There was very little investigation, very little witness development, very little review of discovery. All right. But what specifically, as I understand it, the sentence has been quite substantially reduced because of pretrial ineffective assistance. Are you still complaining about pretrial ineffective assistance now? Well, we're not objecting to the pretrial ineffective assistance that was granted. What we are objecting to is that he was not granted an evidentiary hearing on the trial phase. So specifically what are you claiming? I mean, the problem I had with your brief is I absolutely could not figure out what you were claiming the ineffective assistance was. I understand you're saying that in general his lawyer was no good. But what, since there has to be a prejudice finding, we have to know what it is you're claiming he was ineffective as to and how that prejudices him.  Well, if you review the deposition of Mr. Gordon, who was a CJA-appointed attorney. He said the lawyer was terrible. I understand that. What exactly did he do and how was that prejudiced? Well, for example, Mr. Gordon states that he just seemed ill-prepared, Mr. Candelaria, the main trial attorney, for the testimony of key government witnesses. How? I mean, how and what did it do? Well, he didn't appear to have had any anticipatory cross-examination, didn't, hadn't reviewed any. There was cross-examination, though, wasn't there? There was, but he hadn't reviewed all the discovery and sort of anticipated what they're going to testify to. All right. What witness, what did he say, and how was that prejudicial? Well, we, the problem here is this is a Section 2255, and to pursue the ineffective assistance, we need to develop the record. No, you first need to look at the record and tell us what it is in the record that you're claiming should, that the cross-examination should have been otherwise, in what fashion. What we don't have without going outside the record is why, but what we have, and the prejudice you could also tell from the record, and we don't have any of that. Well, I mean, you'd have to prove a negative. You'd have to prove that he didn't do something. All's we were asking for is an evidentiary hearing. What was the hearing going to give you in terms of the outcome? Let's suppose- We can do discovery and- If you want to let me finish the question. Somebody can come into this court and be poorly prepared and still prevail. Somebody could be in trial and have to cross-examine at the drop of a hat, and sometimes that may be your best cross-examination because you're not over-prepared. So there are all sorts of things, but you look at the outcome. You look at, all right, did this guy wind up inviting, by open-ended question, did he invite narrative testimony that does put a major hole in your client's case, or what? I mean, we need to understand what is it, aside from just a lousy attorney. He was just absolutely not prepared. He just walked into a trial cold. Yes, and? There's no way you can do it. So can you just give a specific example of a cross-examination that produced prejudicial testimony? Well, based on Mr. Gordon's deposition, he hadn't read the discovery and asked questions that are within the discovery. All right, let me tell you what our problem is. We hear ineffective assistance of counsel cases every day, right? And I've never seen one like this. People come in and they say, the cross-examination, he said he cross-examined in this fashion. That was not what he should have done. Had he been prepared, he would have said X. And it matters because if X instead of Y would have made a difference in the trial for the following reason. We just have complete amorphousness here. Well, I guess what all I'm asking for is the opportunity to develop the record because there really isn't a record sufficient to prevail in an ineffective assistance. We just need the opportunity to open that door. Okay, so I think we have your position on that. Do you want to address appellate? You're also arguing that the appellate counsel was ineffective? No. You're not? No. Okay, fine. So it's just trial. Okay, I'll preserve the rest of my time. Okay, fine. Good morning, Your Honors. I am Jim Peters, Assistant United States Attorney from the District of Idaho. Your Honors, this was a unique situation for me. Ordinarily I'm here before you dealing with cases that I tried. I had nothing to do with this case and actually came into it about a week before it was due because the assigned attorney discovered she had a conflict. So the first thing I did, probably similar to what you do, is look at the defense brief. And when I first read the defense brief, I went, oh, my gosh, this attorney must have been horrible. And then I turned to the defense excerpts of record, and I started looking through this inch-and-a-half thick pile for the trial transcript to see exactly what this guy did, Attorney Candelaria, during the trial that was so horrible. And I didn't find any transcript. I found affidavits of his two prior defense attorneys, Mr. Gordon, a friend of mine, a very nice man, and Ms. Elliott, but no trial transcript. So with the assistance of one of our interns, we went through the trial transcript and read it. And quite frankly, as I read the opening statement of counsel, his cross-examination of witnesses, the objections that he made, many of which were sustained, as I read his closing argument, he appeared to be counsel. He appeared to be acting effectively to me. Now, Judge Windmill didn't even go there. He didn't even address whether or not counsel was effective because, as Judge Berzin's questions implied, the pleadings in the 2255 petition did not show prejudice. Judge Windmill did, in fact, find, however, that there was ineffective assistance. In the pretrial situation. Pretrial. So it wasn't as if this was just a – there's no – he doesn't – this attorney doesn't come in with a rosy reputation based on that finding. I don't know this attorney, and I don't know the details. Well, I wouldn't want you to go outside the record in any event. I do know there's a bit of hyperbole going on here, though, in the defense presentation. I saw that in the beginning of the defense brief, it was said that the attorney, Candelaria, did not meet with his client at pretrial. And that's just not true. His own client testified, and it's in the defense excerpts of record at page 169, that defendant testified that his attorney saw him one time in California. At page 171, he testified that he visited with him in Idaho three to four months before trial. And at page 172, the defendant testified that he remembers meeting with the attorney, along with the police and the assistant United States attorney, the night before trial. That's three times the defendant testified. Can I ask a question? Mr. Candelaria was the original lawyer. Is that right? I'm sorry. The original lawyer was Mr. Candelaria. Who was the first lawyer? The lawyer who was at pretrial. Trial counsel? Yes. The lawyer who was being claimed to be an effector. David Candelaria from California. Candelaria. Right. Now, why was that? He was appointed as a CJA lawyer from that estate. No, Judge. He was retained. The defendant lived in the valley in California. He was arrested there. And he was a retained lawyer? His family hired this lawyer for him. That lawyer associated with Kathleen Elliott, who was an Idaho lawyer. She associated for about five months. They had some kind of a conflict, and she withdrew. Then Judge Windmill appointed Phil Gordon about two weeks before trial. Phil Gordon then ---- Well, let me ask a silly question. Can you have an effective assistance of counsel of a retained lawyer? Can you have? I mean, is there a concept of an effective assistance of counsel of a retained lawyer? Is there a concept? In other words, yes. Is it a Sixth Amendment violation to have an ineffective assistance of counsel from a retained lawyer? Oh, I'm sure you can. I'm not judging whether they're getting who's paying them. We're judging the performance of the lawyer. We look at the strictness standard, not who's paying the bills. That's true. That's true. Okay. So the bottom line is Judge Windmill found no prejudice. The defense, either in their pleadings or in their presentation today, has not argued any specific prejudice, and I would ask the Court to affirm Judge Windmill's decision. Okay. Thank you. I have nothing further to add unless the Court has some questions for me. We don't. Thank you. All right. Case argued as submitted.
judges: Snow, Fisher, Berzon